IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION

LINDA M. HALLIDAY,

    Plaintiff,

vs.

CAROLYN W. COLVIN,
Commissioner of Social Security,

    Defendant.

No. C15-4258

REPORT AND RECOMMENDATION

## TABLE OF CONTENTS

I.   *INTRODUCTION* ................................................. 2

II.  *PROCEDURAL BACKGROUND* ............................. 2

III. *PRINCIPLES OF REVIEW* .................................... 3

IV. *FACTS* ............................................................... 5
    A.  *Halliday's Education and Employment Background* ............ 5
    B.  *Administrative Hearing Testimony* ................................. 5
        1.  *Halliday's Testimony* ........................................... 5
        2.  *Vocational Expert's Testimony* ............................... 5
    C.  *Medical Evidence Pertinent to Objections Raised by Halliday* ...... 6

V.  *CONCLUSIONS OF LAW* ...................................... 7
    A.  *ALJ's Disability Determination* ..................................... 7
    B.  *Objections Raised by Claimant* ..................................... 9
        1.  *Credibility Determination* ...................................... 9
        2.  *Medical Opinion Evidence* ................................... 14
            a.  *Dr. Luft's Opinions* ..................................... 14
            b.  *Dr. Whitmer's Opinions* ................................ 16
        3.  *Hypothetical Question* ........................................ 19

VI. *CONCLUSION* .................................................. 20

VII. *RECOMMENDATION* .......................................... 20

## I. INTRODUCTION

This matter comes before the Court on the Complaint (docket number 4) filed by Plaintiff Linda M. Halliday on December 30, 2015, requesting judicial review of the Social Security Commissioner's decision to deny her applications for Title II disability insurance benefits and Title XVI supplemental security income ("SSI") benefits. Halliday asks the Court to reverse the decision of the Social Security Commissioner ("Commissioner") and order the Commissioner to provide her disability insurance benefits and SSI benefits. In the alternative, Halliday requests the Court to remand this matter for further proceedings.

## II. PROCEDURAL BACKGROUND

Halliday filed applications for disability insurance benefits and SSI benefits on February 7, 2014.[1] Halliday alleged disability due to seizures, blurry vision, and back problems. She alleged she became disabled on November 8, 2013.[2] Her applications were denied upon initial review, and on reconsideration. On April 24, 2015, Halliday appeared via video conference with her attorney before Administrative Law Judge ("ALJ") Hallie E. Larsen for an administrative hearing.[3] In a decision dated May 8, 2015, the ALJ denied Halliday's claims. The ALJ determined Halliday was not disabled and not entitled to disability insurance benefits or SSI benefits because she was functionally capable of performing her past relevant work as a general clerk. Halliday appealed the ALJ's decision. On November 13, 2015, the Appeals Council denied Halliday's request for review. Consequently, the ALJ's May 8, 2015 decision was adopted as the Commissioner's final decision.

---

[1] Halliday's application for disability insurance benefits had a protective filing date of January 13, 2014. Her application for SSI benefits had a protective filing date of January 31, 2014.

[2] At the administrative hearing, Halliday amended her disability onset date to April 15, 2014. *See* Administrative Record at 442 (ALJ's decision); 461 (hearing transcript.)

[3] At the hearing, Halliday was represented by attorney Patrick A. Toomey. On appeal, Halliday is represented by attorney Wilford L. Forker.

2

On December 30, 2015, Halliday filed the instant action for judicial review. A briefing schedule was entered on March 11, 2016. On June 9, 2016, Halliday filed a brief arguing there is no substantial evidence in the record to support the ALJ's finding that she is not disabled and that she is functionally capable of performing her past work as a general clerk. On July 25, 2016, the Commissioner filed a responsive brief arguing the ALJ's decision was correct and asking the Court to affirm the ALJ's decision. Halliday filed a reply brief on August 2, 2016. Also on August 2, Judge Leonard T. Strand referred this matter to a magistrate judge for issuance of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

Additionally, on May 13, 2016, both parties together filed a joint statement of facts addressing the case's procedural history, testimony from the administrative hearing, and Halliday's medical history. *See* docket number 13. The parties' joint statement of facts is hereby incorporated by reference. Further discussion of pertinent facts will be addressed, as necessary, in the Court's consideration of this matter.

### *III. PRINCIPLES OF REVIEW*

The Commissioner's final determination not to award disability insurance benefits following an administrative hearing is subject to judicial review. 42 U.S.C. § 405(g). The Court has the authority to "enter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." *Id.* The Commissioner's final determination not to award SSI benefits is subject to judicial review to the same extent as provided in 42 U.S.C. § 405(g). 42 U.S.C. § 1383(c)(3).

The Court "'must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole.'" *Bernard v. Colvin*, 774 F.3d 482, 486 (8th Cir. 2014). Substantial evidence is defined as less than a preponderance of the evidence, but is relevant evidence a "'reasonable mind would find adequate to support the commissioner's conclusion.'" *Grable v. Colvin*, 770 F.3d 1196, 1201 (8th Cir. 2014). In determining whether the ALJ's decision meets this standard, the Court considers "all

of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (citation omitted). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). The Court not only considers the evidence which supports the ALJ's decision, but also the evidence that detracts from his or her decision. *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012)

In *Culbertson v. Shalala*, the Eighth Circuit Court of Appeals explained this standard as follows:

> This standard is 'something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal.'

30 F.3d 934, 939 (8th Cir. 1994). In *Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011), the Eighth Circuit further explained that a court "'will not disturb the denial of benefits so long as the ALJ's decision falls within the available 'zone of choice.'" "'An ALJ's decision is not outside that zone of choice simply because [a court] might have reached a different conclusion had [the court] been the initial finder of fact.'" *Id.* Therefore, "even if inconsistent conclusions may be drawn from the evidence, the agency's decision will be upheld if it is supported by substantial evidence on the record as a whole." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005). *See also Cline v. Colvin*, 771 F.3d 1098, 1102 (8th Cir. 2014) ("'As long as substantial evidence in the record supports the Commissioner's decision, [the court] may not reverse it because substantial evidence exists in the record that would have supported a contrary outcome, or because [the court] would have decided the case differently.' *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002).").

4

## IV. FACTS

### A. Halliday's Education and Employment Background

Halliday was born in 1958. She is a high school graduate. At the administrative hearing, Halliday testified she also had "[a] little bit of college."[4] In the past, she worked as an accounting clerk, general clerk, receptionist, hotel manager, cashier at a convenience store, and server/waitress at a restaurant.

### B. Administrative Hearing Testimony

#### 1. Halliday's Testimony

At the administrative hearing, when asked why she would have difficulties working full-time, Halliday responded she has blurry vision making it difficult to read computer screens. She also stated due to back and hip pain, she is unable to sit for long periods of time. Halliday further indicated she suffers from seizures every two months without medication, but her seizures are controlled when she is taking medication. Next, the ALJ inquired about Halliday's functional limitations. Halliday testified she is able to: (1) lift 25 pounds, (2) stand for 15-30 minutes at one time, (3) walk about 1/4 of a mile, and (4) sit for 45 minutes before needing to stand up and move around. Halliday also addressed her activities of daily living. She stated she does the laundry, cooks, washes dishes, and cleans her house. She testified she does not go grocery shopping and is unable to mow the lawn, though she does perform some other yard work.

#### 2. Vocational Expert's Testimony

At the hearing, the ALJ provided vocational expert James Miller with a hypothetical for an individual who can:

> lift up to 10 pounds frequently and 20 pounds occasionally. [Is able t]o sit and stand and/or walk about six hours each in an eight-hour day, with normal breaks. The individual should never climb ladders, ropes or scaffolds. Can frequently balance, stoop, kneel, crouch and crawl. Should avoid

---

[4] Administrative Record at 463.

5

> concentrated exposure to work around hazards, such as dangerous moving machinery and unprotected heights.

(Administrative Record at 479.) The vocational expert testified that under such limitations, Halliday could perform her past relevant work as a general clerk.

### C. Medical Evidence Pertinent to Objections Raised by Halliday

On April 17, 2014, Halliday was referred to Dr. Michael Luft, D.O., for a "Disability Determination Physical." Dr. Luft noted Halliday believed she was unable to work due to chronic knee, back, and hip pain associated with osteoarthritis. Halliday also reported a seizure disorder dating back to 2007. Upon examination, Dr. Luft diagnosed Halliday with seizure disorder, hip pain, and knee pain. Dr. Luft opined:

> [Halliday] has osteoarthritis of her hip and knees, she would not be able to climb, or crawl, [she] would not be able to work a complete 8 hour day standing, would need to change position every 2 hours. Sitting would not be a problem. [Halliday] would have problems using her hands but would not be able to lift over 25lbs frequently. [She] is unable to drive due to her seizure disorder, her eye sight corrected is 20/40 for both eyes, so she would meet general eye sight requirements for most jobs.

(Administrative Record at 779-80.) Finally, Dr. Luft noted Halliday's "seizure disorder is controlled at this time and [she] states her medication is therapeutic."[5]

In an undated and unsigned letter on Halliday's treating chiropractor's letterhead, Dr. Jamie Whitmer, D.C., addressed Halliday's physical impairments. Dr. Whitmer stated:

> Halliday suffers from a severely dysfunctional left hip. Range of motion is severely restricted and painful in all planes of movement of the left hip. I suspect the left hip to be severely arthritic and in need of replacement. The left hip dysfunction has led to severe spinal pain and dysfunction. I would suspect her lumbar spine to have degenerative disc and joint disease.

---

[5] Administrative Record at 780.

6

(Administrative Record at 806.) Dr. Whitmer also noted in the past Halliday fell from a chair and injured her low back and left hip during a seizure. Dr. Whitmer opined "[s]ince that fall she has been in severe pain and has not responded to conservative chiropractic care and rehabilitation."[6] Dr. Whitmer concluded Halliday "has constant, daily pain that interferes with walking, standing, sitting, and sleeping."[7]

## V. CONCLUSIONS OF LAW

### A. ALJ's Disability Determination

The ALJ determined Halliday is not disabled. In making this determination, the ALJ was required to complete the five-step sequential test provided in the social security regulations. *See* 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *Moore v. Colvin*, 769 F.3d 987, 988 (8th Cir. 2014). The five steps an ALJ must consider are:

> (1) whether the claimant is currently employed; (2) whether the claimant is severely impaired; (3) whether the impairment is or approximates an impairment listed in Appendix 1; (4) whether the claimant can perform past relevant work; and, if not, (5) whether the claimant can perform any other kind of work.

*Hill v. Colvin*, 753 F.3d 798, 800 (8th Cir. 2014); *see also* 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006).

In considering the steps in the five-step process, the ALJ:

> first determines if the claimant engaged in substantial gainful activity. If so, the claimant is not disabled. Second, the ALJ determines whether the claimant has a severe medical impairment that has lasted, or is expected to last, at least

---

[6] Administrative Record at 806.

[7] *Id.*

7

12 months. Third, the ALJ considers the severity of the impairment, specifically whether it meets or equals one of the listed impairments. If the ALJ finds a severe impairment that meets the duration requirement, and meets or equals a listed impairment, then the claimant is disabled. However, the fourth step asks whether the claimant has the residual functional capacity to do past relevant work. If so, the claimant is not disabled. Fifth, the ALJ determines whether the claimant can perform other jobs in the economy. If so, the claimant is not disabled.

*Kluesner v. Astrue*, 607 F.3d 533, 537 (8th Cir. 2010). At the fourth step, the claimant "'bears the burden of demonstrating an inability to return to [his] or her past relevant work.'" *Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010). If the claimant meets this burden, the burden shifts to the Commissioner at step five to demonstrate that "'the claimant has the physical residual functional capacity to perform a significant number of other jobs in the national economy that are consistent with [his or] her impairments and vocational factors such as age, education, and work experience.'" *Phillips v. Astrue*, 671 F.3d 699, 702 (8th Cir. 2012). The RFC is the most an individual can do despite the combined effect of all of his or her credible limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a)(1); *Toland v. Colvin*, 761 F.3d 931, 935 (8th Cir. 2014). The ALJ bears the responsibility for determining "'a claimant's RFC based on all the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of [his or] her limitations.'" *Myers v. Colvin*, 721 F.3d 521, 527 (8th Cir. 2013); 20 C.F.R. §§ 404.1545, 416.945.

The ALJ applied the first step of the analysis and determined Halliday had not engaged in substantial gainful activity since April 15, 2014, the amended alleged disability onset date. At the second step, the ALJ concluded from the medical evidence Halliday has the following severe impairments: osteoarthritis of the hips and history of seizure disorder. At the third step, the ALJ found Halliday did not have an impairment or

combination of impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. At the fourth step, the ALJ determined Halliday's RFC as follows:

> [Halliday] has the residual functional capacity to perform less than the full range of light work . . . except: [she] is limited to lifting and carrying 20 pounds occasionally and 10 pounds frequently. [She] is limited to sitting (with normal breaks) for about 6 hours in an 8-hour workday. [She] is limited to standing or walking (with normal breaks) for about 6 hours in an 8-hour workday. [She] is limited to never climbing ladders, scaffolds or ropes. [She] is limited to frequent balancing, stooping, kneeling, crouching and crawling. [She] is limited to avoiding concentrated exposure to hazards such [as] unprotected heights and dangerous moving machinery.

(Administrative Record at 445-46.) Also at the fourth step, the ALJ determined Halliday is capable of performing her past relevant work as a general clerk. Therefore, the ALJ concluded Halliday was not disabled.

### B. Objections Raised by Claimant

Halliday argues the ALJ erred in three respects. First, Halliday argues the ALJ failed to properly evaluate her subjective allegations of pain and disability. Second, Halliday argues the ALJ failed to properly evaluate and weigh the opinions of Dr. Luft, a consultative examining physician, and Dr. Whitmer, her treating chiropractor. Finally, Halliday argues the ALJ provided a flawed hypothetical question to the vocational expert at the administrative hearing.

#### 1. Credibility Determination

Halliday argues the ALJ failed to properly evaluate her subjective allegations of pain and disability. Halliday maintains the ALJ's credibility determination is not supported by substantial evidence in the record as a whole. The Commissioner argues the ALJ properly considered Halliday's testimony, and properly evaluated the credibility of her subjective complaints.

9

When assessing a claimant's credibility, "[t]he [ALJ] must give full consideration to all the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; [and] (5) functional restrictions." *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). An ALJ should also consider a "a claimant's work history and the absence of objective medical evidence to support the claimant's complaints[.]" *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008). The ALJ, however, may not disregard a claimant's subjective complaints "'solely because the objective medical evidence does not fully support them.'" *Renstrom v. Astrue*, 680 F.3d 1057, 1066 (8th Cir. 2012).

Instead, an ALJ may discount a claimant's subjective complaints "if there are inconsistencies in the record as a whole." *Wildman v. Astrue*, 596 F.3d 959, 968 ((8th Cir. 2010); *see also Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000) ("The ALJ may not discount a claimant's complaints solely because they are not fully supported by the objective medical evidence, but the complaints may be discounted based on inconsistencies in the record as a whole."). If an ALJ discounts a claimant's subjective complaints, he or she is required to "'make an express credibility determination, detailing the reasons for discounting the testimony, setting forth the inconsistencies, and discussing the Polaski factors.'" *Renstrom*, 680 F.3d at 1066; *see also Ford v. Astrue*, 518 F.3d 979, 982 (8th Cir. 2008) (An ALJ is "required to 'detail the reasons for discrediting the testimony and set forth the inconsistencies found.' *Lewis v. Barnhart*, 353 F.3d 642, 647 (8th Cir. 2003)."). Where an ALJ seriously considers, but for good reason explicitly discredits a claimant's subjective complaints, the Court will not disturb the ALJ's credibility determination. *Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2001); *see also Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007) (providing that deference is given to an ALJ

When assessing a claimant's credibility, "[t]he [ALJ] must give full consideration to all the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; [and] (5) functional restrictions." *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). An ALJ should also consider a "a claimant's work history and the absence of objective medical evidence to support the claimant's complaints[.]" *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008). The ALJ, however, may not disregard a claimant's subjective complaints "'solely because the objective medical evidence does not fully support them.'" *Renstrom v. Astrue*, 680 F.3d 1057, 1066 (8th Cir. 2012).

Instead, an ALJ may discount a claimant's subjective complaints "if there are inconsistencies in the record as a whole." *Wildman v. Astrue*, 596 F.3d 959, 968 ((8th Cir. 2010); *see also Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000) ("The ALJ may not discount a claimant's complaints solely because they are not fully supported by the objective medical evidence, but the complaints may be discounted based on inconsistencies in the record as a whole."). If an ALJ discounts a claimant's subjective complaints, he or she is required to "'make an express credibility determination, detailing the reasons for discounting the testimony, setting forth the inconsistencies, and discussing the Polaski factors.'" *Renstrom*, 680 F.3d at 1066; *see also Ford v. Astrue*, 518 F.3d 979, 982 (8th Cir. 2008) (An ALJ is "required to 'detail the reasons for discrediting the testimony and set forth the inconsistencies found.' *Lewis v. Barnhart*, 353 F.3d 642, 647 (8th Cir. 2003)."). Where an ALJ seriously considers, but for good reason explicitly discredits a claimant's subjective complaints, the Court will not disturb the ALJ's credibility determination. *Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2001); *see also Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007) (providing that deference is given to an ALJ

When assessing a claimant's credibility, "[t]he [ALJ] must give full consideration to all the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; [and] (5) functional restrictions." *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). An ALJ should also consider a "a claimant's work history and the absence of objective medical evidence to support the claimant's complaints[.]" *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008). The ALJ, however, may not disregard a claimant's subjective complaints "'solely because the objective medical evidence does not fully support them.'" *Renstrom v. Astrue*, 680 F.3d 1057, 1066 (8th Cir. 2012).

Instead, an ALJ may discount a claimant's subjective complaints "if there are inconsistencies in the record as a whole." *Wildman v. Astrue*, 596 F.3d 959, 968 ((8th Cir. 2010); *see also Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000) ("The ALJ may not discount a claimant's complaints solely because they are not fully supported by the objective medical evidence, but the complaints may be discounted based on inconsistencies in the record as a whole."). If an ALJ discounts a claimant's subjective complaints, he or she is required to "'make an express credibility determination, detailing the reasons for discounting the testimony, setting forth the inconsistencies, and discussing the Polaski factors.'" *Renstrom*, 680 F.3d at 1066; *see also Ford v. Astrue*, 518 F.3d 979, 982 (8th Cir. 2008) (An ALJ is "required to 'detail the reasons for discrediting the testimony and set forth the inconsistencies found.' *Lewis v. Barnhart*, 353 F.3d 642, 647 (8th Cir. 2003)."). Where an ALJ seriously considers, but for good reason explicitly discredits a claimant's subjective complaints, the Court will not disturb the ALJ's credibility determination. *Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2001); *see also Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007) (providing that deference is given to an ALJ

when the ALJ explicitly discredits a claimant's testimony and gives good reason for doing so); *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003) ("If an ALJ explicitly discredits the claimant's testimony and gives good reasons for doing so, we will normally defer to the ALJ's credibility determination."). "'The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts.'" *Vossen v. Astrue*, 612 F.3d 1011, 1017 (8th Cir. 2010).

In her decision, the ALJ addressed Halliday's subjective allegations as follows:

> After careful consideration of the evidence, the undersigned finds that [Halliday's] medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [her] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision.
>
> The limited treatment history for [Halliday] and limited objective findings do not support a finding for disability. On April 4, 2014, [Halliday] underwent a physical consultative examination with Michael Luft, D.O. (Ex. 4F). . . . The physical examination observations noted [Halliday] had some reduced hip and lumbar range of motion with 4 of 5 strength in the upper and lower extremities, fair grip strength with no focal neurological deficits. (Ex. 4F, pp. 2-3). . . . On April 16, 2014, [Halliday] returned to her chiropractor and reported 50 percent improvement in back pain. (Ex. 5F, p. 15). [Halliday] was noted to have a clinically determined arthritic hip with reduced range of motion. *Id.* [She] continued to receive chiropractic treatment through May 16, 2014 with complaints of no greater than 4 of 10 pain. (Ex. 5F, pp. 15-19). On May 16, 2014, [Halliday] was noted to not be responding quickly to conservative treatment with difficulties holding a position for greater than 20 minutes. (Ex. 5F, p. 19).
>
> In July of 2014, x-rays of [Halliday's] hips were interpreted to show mild to early bulky osteoarthritic changes at the left hip suggesting an early CAM defect. (Ex. 6F, p. 3). The medical evidence of record does not show any additional ongoing

treatment for any of [her] impairments between July of 2014 to January of 2015 when she returned to her chiropractor with complaints of low back pain and an inability to ambulate more than 30 feet without sharp pain. (Ex. 16F, p. 1). The objective observations noted [she] had moderate tenderness and tightness and had 10 percent improvement in pain symptoms immediately following treatment. (Ex. 16F, p. 2). [Halliday] returned on April 2, 2015 to her chiropractor with ongoing complaints of back pain that increased if she stood for greater than 5 minutes or sat longer than 15 minutes. (Ex. 19F, p. 1). After adjustment, [she] received a 10 percent improvement in subjective complaints. (Ex. 19F, p. 2). The following day, the physical examination observations noted [Halliday] was []in no acute distress, had normal range of motion, normal sensation and normal reflexes. (Ex. 18F, p. 3). It was also noted the claimant had access to care through Medicaid. (Ex. 18F, p. 1). [Halliday's] limited treatment and the physical examination observations contained in the consultative examiner's assessment support a finding for a range of light work activity.

The undersigned notes that [Halliday] has not been taking her seizure medications and suffers a seizure about once every two months as a result. [She] does not appear to suffer any complications from the seizures and they do not appear severe enough to prompt her to take her medications. Nevertheless, the undersigned has assigned seizure precaution limitations in the residual functional capacity assessment. The undersigned notes a significant gap in treatment from July of 2014 to April of 2015. The undersigned notes that as of April of 2015, [Halliday] had access to care through Medicaid. Prior to April of 2015, it is unclear if [she] lacked insurance coverage. Nevertheless, even if she had lacked insurance coverage, there is no indication [she] sought out sliding fee scale clinics, community care or indigent care. Given her pain complaints, it would have been reasonable to expect the claimant to seek out some type of care during that 9-month period. The care [she] did receive was conservative in nature and from a chiropractor, not a medical doctor. These factors undermine the credibility of the claimant's allegations.

> The undersigned has considered [Halliday's] activities of daily living. In the function reports, [she] stated she could attend to her own personal care, cooked simple meals, performed house chores, went outside daily, drove a car, shopped in stores, was financially unable to pay bills and enjoyed watching television and playing computer games. (Ex. 6E, pp. 2-5; 9E, pp. 2-5). [Halliday's] relatively intact activities of daily living suggest she is capable of performing a range of light work activity.
>
> The undersigned has considered [Halliday's] earnings history. A review of [her] earnings records indicate [she] had a steady earnings record for most of the 15 years leading up to the alleged disability onset date. (Ex. 6D, p. 2). However, in the four years leading up to the amended alleged disability onset date, [Halliday] had earnings more representative of part-time work. *Id.* Additionally, there is no indication [she] sought out the assistance of Vocational Rehabilitation or Job Services for job retraining within specifically defined parameters to accommodate [her] impairments. These factors erode the probative weight of [her] prior earnings history.

(Administrative Record at 447-49.)

In her decision, the ALJ thoroughly considered and discussed Halliday's treatment history, medical evidence, functional restrictions, activities of daily living, work history, and use of medications in making her credibility determination. Thus, having reviewed the entire record, the Court finds that the ALJ adequately considered and addressed the *Polaski* factors in determining that Halliday's subjective allegations of disability were not credible. *See Johnson*, 240 F.3d at 1148; *see also Goff*, 421 F.3d at 791 (an ALJ is not required to explicitly discuss each *Polaski* factor, it is sufficient if the ALJ acknowledges and considers those factors before discounting a claimant's subjective complaints); *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004) ("The ALJ is not required to discuss each *Polaski* factor as long as the analytical framework is recognized and considered. *Brown v. Chater*, 87 F.3d 963, 966 (8th Cir. 1996)."). Accordingly, because the ALJ seriously considered, but for good reasons explicitly discredited Halliday's subjective complaints,

the Court will not disturb the ALJ's credibility determination. *See Johnson*, 240 F.3d at 1148. Even if inconsistent conclusions could be drawn on this issue, the Court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 801.

### 2. Medical Opinion Evidence

#### a. Dr. Luft's Opinions

Halliday argues the ALJ failed to properly consider and weigh the opinions of Dr. Luft, a consultative examining physician who performed a disability determination physical for Halliday. Halliday maintains the ALJ's assessment of Dr. Luft's opinions is not supported by substantial evidence in the record. Halliday concludes that this matter should be remanded for further consideration of Dr. Luft's opinions.

In considering medical evidence, an ALJ is required to evaluate every medical opinion he or she receives from a claimant. 20 C.F.R. §§ 404.1527(c), 416.927(c). If the medical opinion is not from a treating source, then the ALJ considers the following factors for determining the weight to be given to the non-treating medical opinion: "(1) examining relationship, (2) treating relationship, (3) supportability, (4) consistency, (5) specialization, and (6) other factors." *Wiese v. Astrue*, 552 F.3d 728, 731 (8th Cir. 2009) (citing 20 C.F.R. § 404.1527(d)). "'It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians. The ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole.'" *Wagner v. Astrue*, 499 F.3d 842, 848 (8th Cir. 2007) (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001)).

Furthermore, when considering a physician's RFC assessment, an ALJ is not required to give controlling weight to the physician's assessment if it is inconsistent with other substantial evidence in the record. *Strongson*, 361 F.3d at 1070; *see also Travis v. Astrue*, 477 F.3d 1037, 1041 (8th Cir. 2007) ("A physician's statement that is 'not supported by diagnoses based on objective evidence' will not support a finding of

14

disability. *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003). If the doctor's opinion is 'inconsistent with or contrary to the medical evidence as a whole, the ALJ can accord it less weight.' *Id.*"). "If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." Social Security Ruling, 96-8p (July 2, 1996).

Additionally, an ALJ has a duty to develop the record fully and fairly. *Cox v. Astrue*, 495 F.3d 614, 618 (8th Cir. 2007); *Sneed v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004); *Wilcutts v. Apfel*, 143 F.3d 1134, 1137 (8th Cir. 1998). Because an administrative hearing is a non-adversarial proceeding, the ALJ must develop the record fully and fairly in order that "'deserving claimants who apply for benefits receive justice.'" *Wilcutts*, 143 F.3d at 1138 (quoting *Battles v. Shalala*, 36 F.3d 43, 44 (8th Cir. 1994)); *see also Smith v. Barnhart*, 435 F.3d 926, 930 (8th Cir. 2006) ("A social security hearing is a non-adversarial proceeding, and the ALJ has a duty to fully develop the record."). "There is no bright line rule indicating when the Commissioner has or has not adequately developed the record; rather, such an assessment is made on a case-by-case basis." *Mouser v. Astrue*, 545 F.3d 634, 639 (8th Cir. 2008) (citation omitted).

In her decision, the ALJ addressed Dr. Luft's opinions as follows:

> The undersigned has considered the statements of the physical consultative examiner, Michael Luft, D.O. (Ex. 4F). . . . After examining [Halliday], Dr. Luft stated [Halliday] would be unable to climb or crawl, was unable to work a full 8-hour workday standing, would need to change position every 2 hours, had no sitting limitations, could not lift over 25 pounds frequently, could not drive due to a seizure disorder, had adequate eyesight and could manage her own finances. (Ex. 4F, pp. 5-6). The undersigned accepts that [Halliday] is limited to a range of light work activity but notes that Dr. Luft's assessments are based almost wholly on [Halliday's] subjective complaints and self-reported limitations and not based upon the objective physical examination observations or diagnostic evidence obtained from the examination or x-rays. Therefore, the undersigned affords

> those assessments some, but reduced weight. The undersigned specifically rejects the hypothetical posed by [Halliday's] representative at the hearing that was based upon Dr. Luft's assessments for the same reasons stated above.

(Administrative Record at 449.) Additionally, in her decision, the ALJ reviewed Dr. Luft's findings and noted his "physical examination observations noted [Halliday] had some reduced hip and lumbar range of motion with 4 of 5 strength in the upper and lower extremities, fair grip strength with no focal neurological deficits."[8] The ALJ also addressed the mild findings found on x-rays and other objective tests in Halliday's medical history.[9]

Having reviewed the entire record, and considered the ALJ's discussion of the objective medical evidence and review of Halliday's treatment history, the Court finds the ALJ properly considered and weighed the opinion evidence provided by Dr. Luft. Specifically, the ALJ granted Dr. Luft's opinions some/reduced weight, and addressed inconsistencies within Dr. Luft's opinions and the record as a whole. Therefore, the Court concludes that the ALJ properly considered and applied the factors for evaluating a consultative examiner's opinions, and properly granted some/reduced weight to Dr. Luft's opinions. *See Wiese*, 552 F.3d at 731. Accordingly, even if inconsistent conclusions could be drawn on this issue, the Court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 801.

### b. Dr. Whitmer's Opinions

As a chiropractor, Dr. Jamie Whitmer, D.C., is not classified as an "acceptable medical source" under the Social Security Regulations. Even though Dr. Whitmer is not an "acceptable medical source," the Social Security Administration ("SSA") requires an

---

[8] Administrative Record at 447.

[9] *See id.* at 447-48.

ALJ to consider such opinions in making a final disability determination. On August 9, 2006, the SSA issued Social Security Ruling 06-03p. The purpose of Ruling 06-03p was to clarify how the SSA considers opinions from sources not classified as "acceptable medical sources." *See Sloan v. Astrue*, 499 F.3d 883, 888 (8th Cir. 2007) (discussing SSR 06-03p). Ruling 06-03p provides that when considering the opinion of a source that is classified as a "not acceptable medical source," such as a licensed social worker, "it would be appropriate to consider such factors as the nature and extent of the relationship between the source and the individual, the source's qualifications, the source's area of specialty or expertise, the degree to which the source presents relevant evidence to support his or her opinion, whether the opinion is consistent with other evidence, and any other factors that tend to support or refute the opinion." SSR 06-03p. In determining the weight afforded to "other medical evidence," an "ALJ has more discretion and is permitted to consider any inconsistencies found within the record." *Raney v. Barnhart*, 396 F.3d 1007, 1010 (8th Cir. 2005) (citation omitted); *see also Lawson v. Colvin*, 807 F.3d 962, 967 (8th Cir. 2015) (providing an ALJ may discount medical evidence from "other sources" if it is inconsistent with evidence in the record).

In her decision, the ALJ addressed Dr. Whitmer's opinions as follows:

> The undersigned notes that [Dr.] Whitmer is not an acceptable medical source but does have a treating relationship with [Halliday] in his professional capacity. [Dr.] Whitmer stated [Halliday] had a severely dysfunctional left hip, likely required replacement and likely had degenerative disc and joint disease of the spine. (Ex. 7F, p. 2; 17F, p. 2). It was noted [Halliday] suffered from a seizure disorder that caused her to fall from a chair and hurt her hip and lower back that had been non-responsive to conservative chiropractic care and rehabilitation. *Id.* It was stated [Halliday] had daily chronic pain that interfered with all exertional activities and sleeping. *Id.* The undersigned notes that chiropractors doe not treat for seizures. Additionally, the statements are vague and do not contain examination observations contained in the consultative

examiner's findings. (Ex. 4F). Therefore, the undersigned affords those statements little weight.

(Administrative Record at 449.) Also significant to her weighing of Dr. Whitmer's opinions, in her decision, the ALJ reviewed Dr. Luft's findings and noted his "physical examination observations noted [Halliday] had some reduced hip and lumbar range of motion with 4 of 5 strength in the upper and lower extremities, fair grip strength with no focal neurological deficits."[10] In her decision, the ALJ also addressed the mild findings found on x-rays and other objective tests in Halliday's medical history.[11]

Having reviewed the entire record, the Court finds that the ALJ properly considered Dr. Whitmer's opinions in accordance with SSR 06-03p. Furthermore, the ALJ properly articulated her reasons for finding Dr. Whitmer's opinions to be entitled to "little weight," and for finding his opinions to be inconsistent with the record as a whole. *See Raney*, 396 F.3d at 1010 (Providing that in considering the opinions of a medical source that is not an "acceptable medical source," an "ALJ has more discretion and is permitted to consider any inconsistencies found within the record."); *see also Kirby*, 500 F.3d at 709 (providing that an ALJ is entitled to give less weight to a medical source opinion where the opinion is based on a claimant's subjective complaints rather than on objective medical evidence); *Sloan*, 499 F.3d at 889 (providing that a factor to consider in weighing evidence from a medical source that is not an "acceptable medical source" is the consistency of such as source's opinions with the record as a whole). Accordingly, even if inconsistent conclusions could be drawn on this issue, the Court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 801.

---

[10] Administrative Record at 447.

[11] *See id.* at 447-48.

### 3. *Hypothetical Question*

Halliday argues the ALJ's hypothetical question to the vocational expert was incomplete because it did not properly account for all of her impairments. Halliday also argues the ALJ's hypothetical did not contemplate all of her functional limitations. Halliday maintains this matter should be remanded so that the ALJ may provide the vocational expert with a proper and complete hypothetical question.

Hypothetical questions posed to a vocational expert, including a claimant's RFC, must set forth his or her physical and mental impairments. *Goff*, 421 F.3d at 794. "The hypothetical question must capture the concrete consequences of the claimant's deficiencies." *Hunt v. Massanari*, 250 F.3d 622, 625 (8th Cir. 2001) (citing *Taylor v. Chater*, 118 F.3d 1274, 1278 (8th Cir. 1997)). The ALJ is required to include only those impairments which are substantially supported by the record as a whole. *Goose v. Apfel*, 238 F.3d 981, 985 (8th Cir. 2001); *see also Haggard v. Apfel*, 201 F.3d 591, 595 (8th Cir. 1999) ("A hypothetical question 'is sufficient if it sets forth the impairments which are accepted as true by the ALJ.' *See Davis v. Shalala*, 31 F.3d 753, 755 (8th Cir. 1994) (quoting *Roberts v. Heckler*, 783 F.2d 110, 112 (8th Cir. 1985).").

Having reviewed the entire record, the Court finds that the ALJ thoroughly considered and discussed both the medical evidence and Halliday's testimony in determining Halliday's impairments and functional limitations.[12] The Court further determines that the ALJ's findings and conclusions are supported by substantial evidence on the record as a whole. Because the hypothetical question posed to the vocational expert by the ALJ was based on the ALJ's findings and conclusions, the Court concludes that the ALJ's hypothetical question properly included those impairments which were substantially supported by the record as a whole. *See Goose*, 238 F.3d at 985; *see also Forte v. Barnhart*, 377 F.3d 892, 897 (8th Cir. 2004) (an ALJ need only include those work-related

---

[12] *See* Administrative Record at 446-50.

limitations that he or she finds credible). Therefore, the ALJ's hypothetical question was sufficient.

## VI. CONCLUSION

I find the ALJ properly determined Halliday's credibility with regard to her subjective complaints of pain and disability. I also find the ALJ properly considered and weighed the opinions of Dr. Luft and Dr. Whitmer. Finally, I conclude the ALJ provided the vocational expert with a hypothetical question that properly included those impairments and functional limitations substantially supported by the record as a whole. Accordingly, I believe the ALJ's decision is supported by substantial evidence and should be affirmed.

## VII. RECOMMENDATION

For the reasons set forth above, I respectfully recommend that the district court **AFFIRM** the final decision of the Commissioner of Social Security and enter judgment against Halliday and in favor of the Commissioner.

The parties are advised, pursuant to 28 U.S.C. § 636(b)(1), that within fourteen (14) days after being served with a copy of this Report and Recommendation, any party may serve and file written objections with the district court.

DATED this 28th day of October, 2016.

JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA